UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES L. TRUJILLO,<br><br>    Plaintiff,<br><br>vs.<br><br>JOHN MEDINA, *et al.*;<br><br>    Defendants. | 3:06-cv-00143-JCM (VPC)<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE**<br><br>October 2, 2007 |

This Report and Recommendation is made to the Honorable James C. Mahan, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the Court is defendants' motion for summary judgment (#45). Plaintiff opposed (#55) and defendants replied (#58). Also before the court is plaintiff's cross-motion for summary judgment (#56), which defendants opposed (#57). Plaintiff filed a motion to strike defendants' opposition (#59), which defendants did not oppose. For the reasons stated below, the court recommends that defendants' motion for summary judgment (#45) be granted, and plaintiff's cross-motion for summary judgment (#56) and motion to strike (#59) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff James L. Trujillo, a *pro se* prisoner, is currently incarcerated by the Nevada Department of Corrections ("NDOC") at the Southern Desert Correctional Center ("SDCC") (#52). Plaintiff filed his second amended complaint on November 30, 2006, alleging pursuant to 42 U.S.C. § 1983 that prison officials violated his Fourteenth Amendment rights as a pretrial detainee (#16).[1] Plaintiff also brings a number of state claims. *Id.* Plaintiff names as defendants

---

[1] Although plaintiff identifies his claim as a violation of his right against cruel and unusual punishment, the court construes his claim as a Fourteenth Amendment substantive due process claim applicable to pretrial detainees.

1  Washoe County Deputy Sheriffs John Medina, Richard Nelson, Erik Wallitner, Stephanie Moen, Jason Lesher, Daniel Moore, Amber Dause, Thomas Nagel, and Edward Johnston. *Id.*

Plaintiff states that while he was a pretrial detainee at the Washoe County Detention Center ("WCDC") in 2005, he was classified as a protective custody inmate due to the nature of his crimes.[2] *Id.* at 3. Plaintiff alleges that on October 19, 2005, defendants brought him to the WCDC arraignment room prior to traveling to court. *Id.* The arraignment room contained prisoners of all classifications, including high risk and general population inmates. *Id.* Plaintiff alleges that he was in full restraints and was wearing jail clothing which clearly indicated his protective custody status. *Id.* at 3A. Plaintiff further alleges that a much larger general population inmate, later identified as Robert King, knew the nature of plaintiff's crimes based on plaintiff's clothing, and "violently" attacked plaintiff.[3] *Id.* Plaintiff alleges that inmate King was a "special classified high risk inmate, known to assault inmates," and although inmate King was wearing a red jumpsuit to reflect his special status, he was not restrained and was free to move around the room. *Id.* at 3B. Plaintiff claims that defendants were engaged in conversation regarding personal matters, and therefore, failed to notice the attack right away. *Id.* at 3A. When defendants did respond to plaintiff's cries, they removed plaintiff from the room and placed him in a protective custody cell. *Id.* Plaintiff alleges that defendants "snicker[ed]" among themselves after the attack, and that he heard comments from defendants and other inmates to the effect that plaintiff was a "child molester." *Id.* Plaintiff claims that he incurred serious physical injuries as a result of this attack. *Id.*

In count I, plaintiff alleges that defendants deliberately allowed plaintiff to become a target, thereby subjecting him to cruel and unusual punishment, and additionally, that defendants did not treat him equally with other inmates in plaintiff's classification status. *Id.* at 4 – 4B. In counts II – IV, plaintiff alleges that defendants deliberately and knowingly violated his rights as

---

[2] Plaintiff was being held on child molestation charges.

[3] Plaintiff alleges that he is only five feet tall and under 150 pounds, while his attacker is six feet tall and over two hundred pounds. *Id.* at 3A.

2

a prisoner and detainee pursuant to sections 212.010, 212.020, and 197.200 of the Nevada Revised Statutes ("NRS").[4] *Id.* at 5 – 7A.

The Court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.C. 2572, 2576 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and

---

[4] NRS 212.010 states that convicted prisoners retain the protection of the law as if they were not convicted or sentenced. NRS 212.020 states that a jailer guilty of "willful inhumanity or oppression" may be punished where a prisoner suffers bodily harm. NRS 197.200 states that an officer who, under the color of law, "unlawfully and maliciously" "does any act whereby another person is injured in his person... commits oppression," and that an officer committing oppression "shall be punished."

3

submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B. Analysis**

**1. Defendants' Motion for Summary Judgment**

**a. Defendants Moen and Moore**

Defendants move to dismiss defendants Moen and Moore from this action, arguing that plaintiff has filed papers with this court admitting that these defendants "had no direct or indirect involvement in this case" (#45, p. 3). Plaintiff did indeed file papers making such an admission previously, *see* #39, and also recently filed a "Notice to the Court" in which he requests that the court remove defendant Moore (#60). The court construes plaintiff's "Notice to the Court" as a motion for voluntary dismissal pursuant to Rule 41(a)(2). Although plaintiff does not mention defendant Moen in his "Notice to the Court," plaintiff does not oppose defendants' motion to dismiss these two defendants. *See* #55. Therefore, the court dismisses defendants Moen and Moore without prejudice pursuant to Rule 41(a)(2).

**b. Qualified Immunity**

Defendants argue that they are entitled to qualified immunity (#45). The defense of qualified immunity protects state officials sued in their individual capacities unless the conduct complained of violates a clearly established constitutional or statutory right of which a reasonable person would have known. *See, e.g. Jackson v. City of Bremerton*, 268 F.3d 646, 650 (9th Cir. 2001). A qualified immunity analysis begins with a threshold question of whether, based upon facts taken in the light most favorable to the party asserting the injury, the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional

4

right was violated, the court need not inquire further. *Id.* However, if a constitutional violation occurred, the court's second inquiry is whether the official could nevertheless have reasonably, but mistakenly, believed that his or her conduct did not violate a clearly established constitutional right. *Id.*

### (1) Fourteenth Amendment Substantive Due Process

The Fourteenth Amendment prohibits "punishment" of non-convicted, pretrial detainees without due process of law. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Courts apply the same standards to pretrial detainee claims as to prisoners' claims of cruel and unusual punishment pursuant to the Eighth Amendment. *Redman v. County of San Diego*, 942 F.2d 1435, 1441-43 (9th Cir. 1991). A prison official violates the Eighth Amendment if he shows deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). "Conduct that is either 'an unnecessary and wanton infliction of pain' or 'repugnant to the conscience of mankind' is 'sufficiently harmful to evidence deliberate indifference.'" *Redman*, 942 F.2d at 1441. Officials must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 8. The Ninth Circuit has stated

> The 'deliberate indifference' standard requires a finding of some degree of 'individual culpability,' but does not require express intent to punish. The standard does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur.

*Redman*, 942 F.2d at 1443 (*quoting Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986)).

Defendants' position is that they had absolutely no suspicion that plaintiff would be attacked; indeed, even plaintiff voiced no such concern (#45). Defendants claim that in addition to plaintiff, there were other protective custody inmates in the room with the general population inmates, all of whom were awaiting transport to court. *Id.* Defendants maintain that inmate King was not seated next to plaintiff, was shackled at the waist identical to plaintiff, and assaulted

5

1  plaintiff without warning. *Id.* Defendants were paying attention to the situation, arrived to break
2  up the fight only three to four seconds after it began, and contend that plaintiff's injuries were
3  minor enough that they cannot be considered "serious." *Id.* Defendants claim that they adhered
4  to standard WCDC policy of placing all inmates together while waiting for transport to court. *Id.*
5  Defendants note that although inmate King was involved in a September 2005 incident in which
6  he hit another inmate in the arraignment room, there is evidence that the other inmate provoked
7  King. *Id.*

8      After reviewing the evidence, the court concludes that there are no genuine issues of
9  material fact. Plaintiff's evidence reveals that high risk inmates such as administrative and
10 disciplinary segregation inmates and mental health inmates wear red uniforms (#55, Exhibit A).
11 Protective segregation inmates wear light blue uniforms. *Id.* Protective segregation inmates
12 include, but are not limited to, "civil prisoners, protected witnesses, inmates whose charge
13 involves a crime against a child, an inmate whose sexual orientation is such that it would cause
14 a disruption in general population or any other inmate who requests Protective Custody and has
15 a valid reason." *Id.*, Exhibits S-T.

16     Defendants submitted a videotape of the incident on October 19, 2005. The videotape
17 reveals that defendants placed plaintiff, who is wearing a light blue uniform, on the front row
18 bench next to three inmates, including inmate King, who are all wearing red uniforms (#45,
19 Exhibit K). Plaintiff appears to be the only inmate in the room wearing a light blue uniform. *Id.*
20 Plaintiff and all three red-uniformed inmates are wearing waist restraints. *Id.* None of the
21 inmates have their feet in restraints. *Id.* It is not apparent from the videotape that the officers
22 were discussing personal matters; in fact, it appears that the officers were quite occupied in
23 bringing other inmates into the arraignment room. *Id.* In the videotape, inmate King suddenly
24 stands up, walks quickly around the inmate sitting between himself and plaintiff, and then hits
25 plaintiff on plaintiff's right side. *Id.* The attack lasts for approximately three seconds before
26 defendants pull inmate King off of plaintiff. *Id.* Plaintiff quickly sits up from where he had fallen
27 on his side on the bench, and observes inmate King on the floor being restrained. *Id.* Plaintiff
28 does not appear seriously injured. *Id.* Moments later, defendants remove plaintiff from the room.

1  *Id.*

2  Plaintiff submits the defendants' incident reports, his own October 19, 2005 statement, and a witness statement (#55, Exhibits H – P). All are consistent with the court's observation of the videotaped incident.

Plaintiff also submits two medical reports. The first, written shortly after the attack, describes plaintiff's wounds as "superficial," and notes that plaintiff had some pain on his right side where he had been hit (#55, Exhibit C). The second report, drafted several hours later, states that plaintiff suffered a "small bleed" in his right eye from inmate King's "head butt," and sustained some tenderness and swelling on his right temporal area and right flank. *Id.*, Exhibit F. The photos defendants submit confirm the medical reports, revealing no serious visible injuries (#45, Exhibit H).

Plaintiff alleges that inmate King had previously attacked another inmate in the arraignment room, just one month prior to the attack on plaintiff. Defendants submit a videotape of this September 16, 2005 incident, and argue that it appears another inmate provoked inmate King. While a review of this evidence indicates that inmate King may have been provoked, it is not conclusive. However, there is also no evidence before the court that inmate King is generally aggressive toward protective custody inmates.

Defendants Nelson, Johnston, Dause, Lesher, Wallitner, Nagel and Medina all submit affidavits (#45, Exhibits A – G). The affidavits are consistent with the incident reports and the videotape. All affidavits state that the officers were following standard operating procedures for court appearances, that the procedures were appropriate, and that none of the defendants is authorized to make policy in connection with their positions at the Washoe County Sheriff's Department. *Id.* All defendants further state that plaintiff never expressed any fear of inmate King, and that none of the deputies had any reason to believe that inmate King would assault plaintiff. *Id.*

Plaintiff submits the Washoe County Sheriff's Office Standard Operating Procedure 705 ("SOP 75"), which discusses the classification of inmates (#55, Exhibits S – T). Plaintiff contends that pursuant to SOP 75, he should not have been in the same room as other inmates,

since he is a protective custody inmate. *Id.* The procedure states, "Inmates classed into Protective Custody will be housed separately from the general population. **Protective Custody inmates will be kept separate** from all other inmates whenever possible to prevent these inmates from being placed at risk." *Id.*, Exhibit S (emphasis in original). However, defendants maintain that this is the housing policy, not the court transport policy, and therefore it applies only to cell assignments and tier time (#58). Moreover, the court notes that the phrase "whenever possible" rules out the requirement that protective custody inmates can *never* be in the same area as other inmates.

Finally, although plaintiff alleges that officers and other inmates were calling him a "child molester," plaintiff presents no such evidence; indeed, even plaintiff's witness to the incident did not state that she heard such comments. *Id.*, Exhibit D.

Based on the above evidence, the court concludes that no constitutional violation occurred. It is clear that prisoners are entitled to reasonable protection from attacks by other inmates. *Farmer*, 511 U.S. at 833 ("[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners"). However, "not... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. The evidence, particularly the videotape, demonstrates that at the most, the individual defendants may have acted negligently in placing a protective custody inmate next to three high risk inmates, while guards, although close in proximity, were clearly busy with other work duties. However, mere negligence on the part of prison staff is not sufficient to prove deliberate indifference. *Id.* at 836. While the fact that plaintiff is in protective custody would tend to alert defendants that plaintiff may need more protection than other inmates, there is no evidence that defendants were aware of any specific threat to plaintiff on October 19, 2005. In addition, there is no evidence before the court that the procedures defendants employ have led to similar attacks in the past. Finally, although plaintiff did suffer minor injuries, the documented injuries do not rise to the level of objectively serious harm.

The court is dismayed about incidents of inmate attacks by other inmates, including the one in this case. Nonetheless, there is no evidence here that defendants acted with deliberate

indifference to a risk of serious harm to plaintiff. As defendants have committed no constitutional violation, the court need not complete the qualified immunity analysis. The court grants summary judgment to defendants as to plaintiff's substantive due process claim.

### (2) Fourteenth Amendment Equal Protection

Plaintiff also brings an equal protection claim in count I, alleging that defendants did not treat him equally with other inmates in his classification status. To prove an equal protection violation, a plaintiff must demonstrate that defendants acted with an intent to discriminate against the plaintiff based on his membership within a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998). Prisoners are not a "suspect class" of persons under the equal protection clause of the Fourteenth Amendment. *Serrano v. Francis*, 345 F.3d 1071, 1079 n. 6 (9th Cir. 2004). Plaintiff has not alleged that he is a member of any other protected class.

However, even if plaintiff's claim does not implicate a suspect class or fundamental right, plaintiff may demonstrate an equal protection violation by proving defendants' actions were "patently arbitrary and bear[s] no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (citations omitted). In this case, the evidence demonstrates that defendants were following standard WCDC procedures when they placed plaintiff in the arraignment room prior to his court appearance. There is no evidence that defendants acted arbitrarily. Defendants' each affirm that the protocol they followed was appropriate, and plaintiff has not refuted this with evidence that the policy is not acceptable. Although plaintiff was attacked, plaintiff has not alleged, and there is no evidence before the court, that the attack was no more than an isolated incident. As defendants have not violated plaintiff's equal protection rights, the court need not complete the qualified immunity analysis. The court grants defendants summary judgment as to plaintiff's equal protection claim.

### c. Policy or Procedure

Plaintiff sued all defendants in their official capacities. The Supreme Court has held that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). However, municipal liability attaches only

where the defendant possess final authority to establish municipal policy with respect to the action at issue. *City of St. Louis v. Praprotnik*, 485 US 112, 123 (1988) (*citing Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986) ("The official must also be responsible for establishing final governmental policy respecting such activity before the municipality can be held liable")). There is undisputed evidence before the court indicating that none of the named defendants are policymakers at the WCDC (#45, Exhibits A – G). To the extent that plaintiff is attempting to challenge the WCDC court transport policy and procedure that allows inmates of different classifications to occupy the same area while awaiting transport to court, the plaintiff has failed to name the correct defendants.

### d. State Law Claims

Because the court has dismissed plaintiff's constitutional claim, it declines to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. §1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim... if... the district court has dismissed all claims over which it has original jurisdiction.").

### 2. Plaintiff's Motion for Summary Judgment

Plaintiff filed a cross-motion for summary judgment, in which he makes essentially the same arguments as in his opposition to defendants' motion for summary judgment (#56). As the court has already rejected these arguments, the court denies plaintiff's motion for summary judgment for the clear reasons set out above.[5]

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that:

- Plaintiff wishes to voluntarily dismiss defendants Moen and Moore from this action (*see* #60);

- Defendants did not act with deliberate indifference in placing plaintiff in the arraignment room prior to his court appearance next to three high risk inmates, one of whom attacked plaintiff, where defendants were present in the room and stopped the attack three seconds after it began;

---

[5] Defendants oppose plaintiff's cross-motion for summary judgment, arguing that it was untimely filed (#57). Plaintiff disputes this contention (#59). As the court has granted summary judgment to defendants, these issues are moot. The court denies as moot plaintiff's motion to strike (#59).

- Plaintiff did not incur "serious" injuries to constitute a violation of his substantive due process rights as a pretrial detainee;

- Defendants did not act arbitrarily with no rational relationship to a legitimate governmental interest in placing plaintiff in the arraignment room next to three high risk inmates, one of whom attacked plaintiff;

- Plaintiff's cross motion for summary judgment is moot in light of the court's conclusions;

- The court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

As such, the court recommends that defendants' motion for summary judgment (#45) be **GRANTED**, plaintiff's cross-motion for summary judgment (#56) be **DENIED,** and plaintiff's motion to strike (#59) be **DENIED AS MOOT**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#45) be **GRANTED**, plaintiff's cross-motion for summary judgment (#56) be **DENIED**, and plaintiff's motion to strike (#59) be **DENIED AS MOOT**.

**DATED:** October 2, 2007.

UNITED STATES MAGISTRATE JUDGE

11